**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-2301**

JOHN C. BENNISON,

                    Plaintiff - Appellant,

          v.

WESTERN SURETY COMPANY,

                    Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.   Leonie M. Brinkema, District Judge. (1:09-cv-00891-LMB-IDD)

Argued:  October 26, 2010          Decided:  December 23, 2010

Before TRAXLER, Chief Judge, GREGORY, Circuit Judge, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Burton Jay Rubin, BURTON JAY RUBIN, ATTORNEY AT LAW, Burke, Virginia, for Appellant.  Gregory T. Lawrence, CONTI, FENN & LAWRENCE, LLC, Baltimore, Maryland, for Appellee.  **ON BRIEF:** Anthony M. Conti, CONTI, FENN & LAWRENCE, LLC, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

John Bennison (Bennison) brought this declaratory judgment action against Western Surety Company (Western Surety) seeking a declaration that Western Surety was liable under a surety bond (the Surety Bond) it issued to Jaehyung Kim, Esquire, of the Law Office of Jaehyung Kim, LLC d/b/a First Title & Escrow (First Title). The district court granted Western Surety's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Bennison appeals. We affirm.

This case has its genesis from a real estate transaction involving the purchase of a home at 7214 Poplar Street, Annandale, Virginia (the Poplar Street Property). To purchase the home, the purchasers obtained financing from two sources. First, the purchasers borrowed $600,000 from Burke and Herbert Bank & Trust Company (Burke and Herbert). Next, the purchasers secured $120,000 in financing (the Loan) from G.W. Investments, Inc. (G.W. Investments). G.W. Investments' lien on the Poplar Street Property was subordinate to Burke and Herbert's lien.[1]

The settlement agent for the transaction was First Title, who also acted as an agent for Chicago Title Insurance Company

_____

[1] Bennison was an "individual investor who placed funds with . . . G.W. Investments" for the purpose of obtaining an interest in the Loan. (J.A. 6). By assignment, Bennison acquired from G.W. Investments all of its rights under the Loan.

(Chicago Title). On October 6, 2006, G.W. Investments sent closing instructions for the Loan to First Title via facsimile. As part of its closing instructions, G.W. Investments directed First Title to secure a commitment for title insurance on not only the Poplar Street Property, but also on another property owned by the purchasers, namely, a home located at 10957 Adare Drive, Fairfax, Virginia (the Adare Drive Property).

On October 9, 2006, First Title faxed to G.W. Investments a standard commitment for title insurance (the Chicago Title Commitment). The Chicago Title Commitment provided that a standard title insurance policy was to be issued covering the property described in "Exhibit A." (J.A. 52). The Chicago Title Commitment contained two Exhibit As, one identified the Poplar Street Property, the other identified the Adare Drive Property.

On October 12, 2006, the purchasers closed on the Poplar Street Property. At the closing, G.W. Investments released the $120,000, the Poplar Street Property was transferred, and Chicago Title was paid $338 for title insurance pursuant to the Chicago Title Commitment.[2]

---

[2] The Loan was secured by a blanket deed of trust on both the Poplar Street Property and the Adare Drive Property.

On November 28, 2006, Chicago Title issued a standard title insurance policy to G.W. Investments. Unlike the Chicago Title Commitment, the standard title insurance policy issued to G.W. Investments did not include the Adare Drive Property.

In or about July 2007, the purchasers defaulted on all of their mortgages on both the Poplar Street Property and the Adare Drive Property. Both the Poplar Street Property and the Adare Drive Property were sold at foreclosure in or about February 2008. Partly because of a prior lien on the Adare Drive Property, no surplus was available to pay the balance due on the Loan.

On October 6, 2008, Bennison filed a complaint against Chicago Title in the United States District Court for the Eastern District of Virginia. In this lawsuit, Bennison represented that title insurance was obtained on the both the Poplar Street Property and the Adare Drive Property. Bennison settled his lawsuit against Chicago Title for approximately $37,000.

While the case against Chicago Title was pending, Bennison made a claim on the Surety Bond issued by Western Surety to First Title. The Surety Bond provided that it was null and void if First Title acted in full compliance with the laws of the Commonwealth of Virginia and rules, regulations, and orders prescribed by the Virginia State Bar pertaining to settlement

- 4 -

agents. Western Surety denied the claim, and Bennison brought this declaratory judgment action in the United States District Court for the Eastern District of Virginia. In direct contradiction to his position in the Chicago Title action, Bennison alleged that no commitment for title insurance, and, therefore, no title insurance was obtained on the Adare Drive Property.

In Virginia, a real estate settlement agent is required to purchase a surety bond. Va. Code. Ann. § 55-525.20(B)(3). All funds deposited with the settlement agent must be handled in a fiduciary capacity, and such funds must be applied only in accordance with the terms of the individual instructions or agreements under which the funds were accepted. Id. § 55-525.24(A)(2). Bennison alleged in the district court that First Title violated § 55-525.24(A)(2) by not disbursing the settlement funds in accordance with the closing instructions. According to Bennison, First Title did not comply with the closing instructions because it failed to secure a commitment for title insurance on the Adare Drive Property.

Western Surety moved for dismissal of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court held a hearing on the motion, and, at the conclusion of the hearing, the district court granted the motion. According to the district court, the

"commitment . . . is clear on its face that Chicago Title was going to provide title [insurance] for the two properties." (J.A. 128). Bennison noted a timely appeal.

On appeal, Bennison argues that the district court erred when it granted Western Surety's motion to dismiss. Bennison alleges that he pled sufficient facts to demonstrate that Western Surety was liable under the Surety Bond because First Title did not disperse the settlement funds in accordance with G.W. Investment's closing instructions. More specifically, Bennison alleges that First Title never obtained a commitment for title insurance on the Adare Drive Property in direct contravention to such instructions.

The parties agree that Western Surety is only liable under the Surety Bond if First Title disbursed the settlement funds in contravention to G.W. Investment's closing instructions. Here, the closing instructions, among other things, directed First Title to secure a commitment for title insurance on not only the Poplar Street Property, but also on the Adare Drive Property. First Title did just that. First Title faxed to G.W. Investments the Chicago Title Commitment, which provided that a standard title insurance policy was to be issued covering the property described in "Exhibit A." (J.A. 52). The Chicago Title Commitment contains two Exhibit As, one identifying the Poplar Street Property, the other identifying the Adare Drive

- 6 -

Property.  As the district court noted, the listing of both of these properties in the Exhibit As secured a commitment for title insurance on both of these properties.

Bennison argues that First Title disbursed the settlement funds in contravention to G.W. Investment's closing instructions, because: (1) the Exhibit A covering the Adare Drive Property was "extraneous" to the Chicago Title Commitment, Appellant's Reply Br. at 4, and (2) the deposition testimony of an employee of First Title taken during Bennison's action against Chicago Title demonstrates that no commitment for title insurance was obtained on the Adare Drive Property.  Neither of these arguments has merit.  The Exhibit A covering the Adare Drive Property was not extraneous to the Chicago Title Commitment--it was part of it, as evidenced by the facts that the Exhibit As were sent in First Title's facsimile to G.W. Investments and that the two Exhibits As followed sequentially in the facsimile.  With regard to the deposition testimony, at most, the First Title employee was not sure whether a commitment for title insurance was obtained on the Adare Drive Property. Such vague and inconclusive testimony is of no help to Bennison. Accordingly, the judgment of the district court is affirmed.

<u>AFFIRMED</u>